# Rosenbloom Trust

OPINION BY RAHAUSER, J.:

This trust estate came before the court for audit on October 21, 1980. It was continued for further audit until October 28, 1980. At that time a stipulation of material facts was submitted to the court and made part of the record.

Solomon Rosenbloom died November 16, 1925. He had three children: Estelle R. Weinstock, who has three children; Charles J. Rosenbloom, who died April 1, 1973 without children; and Arthur M. Rosenbloom, who died July 21, 1979 survived by one child, Eve Stern Stuart. Mrs. Stuart has no children.

Solomon Rosenbloom, by his last will, bequeathed his residuary estate to the trustees of the trust established by Article VII of his will.

Mellon Bank is the sole surviving trustee. The trust holds municipal bonds and short-term investments valued at approximately $1,300,000, and shares of the Rosenbloom Securities Corporation valued at $2,426,847.75.

Rosenbloom Securities Corporation is a personal holding company under Section 542 of the Internal Revenue Code. A special meeting of the directors of this corporation was held on December 19, 1979, at which the secretary reported that the corporation's accountants estimated that the corporation would have income of $443,000 for the year ending December 31, 1979. The said income consisted of dividends of $321,000, interest of $46,000 and short-term capital gains of approximately $76,000. The actual amount of short-term capital gains was $74,410.88. Of this sum, $33,016.54 represented short-term gains from the sale of options and $41,394.34 represented

short-term gains from the sale of securities. The accountants estimated expenses at $65,000, leaving a net income of $380,000.

The minutes of the corporation indicate that the directors of the Rosenbloom Securities Corporation were considering the distribution of the short-term capital gains as corporate dividends. In the consideration of the corporate dividends, the question arose as to whether the short-term capital gains were included in the personal holding company income under Internal Revenue Code Section 543.

The discussion of said matter resulted in the adoption of a resolution which was approved at the annual meeting of the directors on May 7, 1980. The resolution was as follows:

> "Resolved, that a dividend of approximately $145 a share if short term capital gains are included as personal holding company income or $96 a share if such gains are not so included be paid to shareholders of record on December 19, 1979, the actual amount of the dividend and the payment date thereof to be determined by the president of the corporation.

> "Further Resolved, that the president be authorized to take such action as he may deem necessary or desirable to effectuate the intent of this resolution."

By a letter dated January 3, 1980 the president of Rosenbloom Securities Corporation stated that the dividend of $146.50 payable December 31 contained approximately $51.33 of short-term capital gains and profits on the sale of options for securities owned by the corporation, and that the corporation had to pay out the short-term capital gains in order not to be subject to personal holding company penalty tax.

The trustee, upon receipt of the dividend in the amount of $98,887.50 ($146.50 per share on 675 shares), allocated $37,125 to the trust principal ($55 per share) and the balance to income which was subsequently distributed to the beneficiaries. This allocation to principal of $55 per share was based on a letter from the accountants for Rosenbloom Securities Corporation dated January 29, 1980 indicating that they estimated that the short-term gains of the corporation for the year 1979 would not exceed $55 per share.

Objection to this allocation was made to Mellon Bank, trustee, by Eve Stern Stuart, an income beneficiary. Her position was that the entire distribution constituted income in the

hands of the trustee and should be distributed to the income beneficiaries.

The parties have stipulated, inter alia, to the following facts:

"12. The short-term capital gains of RSC for the calendar year 1979 were $74,411. Of the total dividend of $146.50 per share of RSC paid for the fourth quarter of 1979, $49.61 per share ($74,411 divided by 1,500 shares outstanding on December 31, 1979), was attributable to the short-term capital gains of RSC, and it is the characterization of this sum as income or principal in the hands of the Trustee which is in dispute. The parties agree that the balance of the fourth quarter 1979 dividend, or $96.89 per share, is allocable to income."

The question before this court for determination is whether that part of the dividend distributed by the Rosenbloom Securities Corporation, a personal holding company, to the trustee, which was derived and identified as being from short-term capital gains, is allocable to principal or income for purposes of trust accounting and distribution.

This case is not to be determined by the designation of the distribution for federal income tax purposes. Likewise it is not to be determined under the laws of Delaware, the state in which Rosenbloom Securities Corporation is incorporated. It is to be determined under the terms of the Principal and Income Act of Pennsylvania, the state in which the trust was established and in which the trustee received the dividend and must make its decision as to the proper distribution of the dividend.

The Principal and Income Act does not refer to stock options, the sale of which gave rise to a portion of the dividend presently before the court for disposition. However, Section 8103 (b) of the P.E.F. Code provides, inter alia:

"All receipts of money or other property paid or delivered as the consideration for sale . . . upon property forming a part of the principal . . . shall be deemed principal."

Section 8105 (b) of the Principal and Income Act provides:

"(b) All rights to subscribe to the shares or other securities or obligations of a corporation, accruing on account of the ownership of shares or other securities in such corporation, and the proceeds of any sale of such rights shall be deemed principal. All rights to subscribe to the shares or other securities or obligations of a corporation, accruing on account of the ownership of shares or other securities in another corporation, and the proceeds of any sale of such rights shall be deemed income."

In the present case the Rosenbloom Securities Corporation granted options to third parties to purchase securities which the said corporation owned. The proceeds of the sales of these options to purchase stock owned by the Rosenbloom Securities Corporation accrued to that corporation by virtue of its ownership of that stock. This is analogous to the sale of rights to subscribe to the shares of a corporation accruing on account of ownership of shares in such corporation. Under Section 8105 (b) the proceeds of such sales of rights are deemed principal and so, by analogy, the proceeds of such sales of options should be deemed principal. While not controlling or heretofore indicated, it may be noted that a gain realized by the seller on the sale of a call option on securities, like the sales here involved, is a short-term capital gain under the provisions of Section 1233 of the Internal Revenue Code.

The question arises whether the fact that the underlying securities and call options which were sold were owned by Rosenbloom Securities Corporation, a personal holding company, rather than by the trustee, where the trust owned 48% (and now in excess of 50%) of the stock of said personal holding company, requires the proceeds of such sales to be allocated to income rather than to principal.

The auditing judge is of the opinion that the Pennsylvania Supreme Court indicated to the contrary in *Brock Est.*, 420 Pa. 458. In that case the court stated the question as follows:

"The issue, narrow in scope, presents, primarily, a problem of statutory construction: is a distribution made by a mutual fund or regulated investment company the source of which distribution is 'realized capital gains' allocable to income or to principal under the Pennsylvania Principal and Income Act of 1947? More specifically, does such 'capital distribution' fall within the provisions of §(5)(1) or of §(5)(3) of the Act?"

The court then proceeded to hold:

"After inquiring into the nature of mutual funds and regulated investment companies and the provisions of both §§5(1) and 5(3) of the Principal and Income Act, we are satisfied that the distribution by this Fund of cash realized from capital gains of the Fund is properly allocable to principal under the Second and Third rules set forth in 5(3). Such a conclusion not only arises from a construction of the statutory language but also is consonant with the trend in other jurisdictions."

Section 5(1) of the Act (now Section 8105(a) of the Pro-

bate, Estates and Fiduciaries Code) provides as follows:

"(a) Corporate distributions made to a trustee in the shares of the distributing corporation, however described or designated by the distributing corporation, shall be deemed principal but if the number of shares of any class distributed to shareholders of such class is 6% or less of the number of shares of that class outstanding on the record date for such distribution, the shares so distributed shall be deemed income. Except as provided above and in other subsections of this section all dividends payable otherwise than in shares of the distributing corporation, including ordinary and extraordinary cash dividends and dividends payable in shares or other securities or obligations of corporations other than the distributing corporation, shall be deemed income. Where the trustee shall have the option of receiving a dividend, either in cash or in the shares of the distributing corporation, it shall be considered as a cash dividend and deemed income, irrespective of the choice made by the trustee."

Section 5(3) of the Act (now Section 8105(c) of the Probate, Estates and Fiduciaries Code) states:

"(c) Where the assets of a corporation are liquidated, wholly or partially, amounts paid upon corporate shares as cash dividends, declared before such liquidation began, or as arrears of cumulative preferred, or guaranteed dividends shall be deemed income, all other amounts paid upon corporate shares on disbursement of the corporate assets to the stockholders shall be deemed principal. *All disbursements of corporate assets to the stockholders, whenever made, which are designated by the corporation as a return of capital or division of corporate property, shall be deemed principal. Any profit or loss resulting from the sale or liquidation of corporate shares shall enure to or fall upon principal.*" (Emphasis supplied)

The sale of stocks owned by Rosenbloom Securities Corporation and the subsequent distribution of the capital gains on such sales to the shareholders of Rosenbloom Securities Corporation constituted a "disbursement of corporate assets" within the meaning of Section 8105(c) of the P.E.F. Code. The minutes of the meeting of the said corporation held on December 19, 1979, and the letter from the president of the corporation to the trustee informing the trustee of the source of the dividend, certainly designated the disbursement of a specific part of the dividend as a "return of capital", i.e., short-term capital gains, within the meaning of Section 8105(c) of the P.E.F. Code.

The written statement by the mutual fund involved in *Brock Estate,* supra, indicated that the payment of eight (8) cents per share was "payment from realized capital gains".

In analyzing the statement which accompanied the payment, the court said, at page 473:

> "Clearly the Fund has 'designated' this 'disbursement of its corporate assets' as 'a return of capital' and, clearly, this distribution or disbursement falls within the second rule of §5(3) and, therefore, must be 'deemed principal'."

In the present case the Rosenbloom Securities Corporation, through its president, M. Richard Wyman, notified the trustee by letter dated January 3, 1980 that:

> "The dividend of $146.50 payable December 31 contains approximately $51.33 of short-term capital gains and profits on the sale of options for securities owned by the corporation. Prior to this week, dividends of $115.70 per share had been paid during the year. The approximate $60,000 of short-term capital gains and $17,000 of profits from the sale of options equals $51.33 . . ."

The above letter was clarified in pertinent part by a letter dated January 31, 1980:

> "This sentence should have read: 'In calculating the dividend payment of $146.50, payable December 31, 1979, short-term capital gains and profits on the sale of options for the year were taken into account. The amount of the gains and profits are estimated to be approximately $51.33.'. . ."

The parties have stipulated that, in fact, $49.61 of the $146.50 above referred to was attributable to the short-term gains of Rosenbloom Securities Corporation. The statement of Rosenbloom Securities Corporation to the trustee clearly informed it that approximately $51.33 of the $146.50 per share dividend was a return of capital and thus met the requirements of Section 8105(c) of the P.E.F. Code.

In *Brock Estate*, supra, the Pennsylvania Supreme Court, at page 473, treated the capital gain realized by a mutual fund or regulated investment company, and distributed by that company to testamentary trustees, as a return of capital to the trustees. The auditing judge is of the opinion that for fiduciary accounting and distribution purposes there is no substantial difference between a dividend distributed by a mutual fund or regulated investment company, as in *Brock Estate*, supra, and a dividend distributed by a personal holding company, such as Rosenbloom Securities Corporation, here involved. If the mutual fund, regulated investment company or personal holding company in fact realizes capital gains and makes a distribution thereof, in whole or in part, to its stock-

holders, clearly informing them that a specified amount of such distribution is a payment from realized capital gains, or some equivalent expression indicating that the corporation is making a return of capital, such disbursement must be deemed principal for fiduciary accounting and distribution purposes.

The auditing judge is of the opinion that of the total dividend of $146.50 per share of Rosenbloom Securities Corporation paid for the fourth quarter of 1979, $49.61 per share was attributable to the short-term gains of Rosenbloom Securities Corporation, and that the said amount of $49.61 per share is principal in the hands of Mellon Bank, N.A., surviving trustee in the estate of Solomon Rosenbloom, deceased.